IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  04-cv-00336-OES-CBS

NEILA J. BROOKS,

Plaintiff(s),

vs.

SUPERVALU,

Defendant(s).

_____

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

_____

ENTERED BY U.S. MAGISTRATE JUDGE O. EDWARD SCHLATTER

**INTRODUCTION AND SUMMARY OF RULING**

Plaintiff has brought this action pursuant to Title VII, claiming that she was

terminated from her employment with defendant, Supervalu, Inc., because of her

gender and age.  42 U.S.C. § 2000e-16 (gender); 29 U.S.C. § 621-634 (ADEA).

Plaintiff is a woman who was 57 years old at the time of the events that gave rise to

her termination.

Defendant has filed a motion for summary judgment.  In its motion, defendant

argues that summary judgment should be granted in its favor (a) because plaintiff

cannot present a *prima facie* case in regard to either of her two claims, and (b)

because plaintiff cannot demonstrate that the legitimate business reason upon which defendant relies, insubordination, is a pretext to cover discriminatory intent. Defendant argues further that plaintiff has failed to satisfy the requirements to show a *prima facie* case of age discrimination because she cannot demonstrate that she was performing satisfactorily at the time that she was terminated; and because she cannot show that her position was filled by a younger person or that she was treated less favorably than persons younger than herself.  Finally, defendant argues that plaintiff has failed to satisfy the requirements to show a *prima facie* case of gender discrimination because she cannot demonstrate that at the time that she was terminated she was performing satisfactorily, or that she was treated less favorably than male employees.

Plaintiff disputes these assertions.  She argues both that she has satisfied the requirements for a *prima facie* case, and that she has presented evidence that raises a genuine issue of material fact with regard to pretext.

**Summary of ruling.**  Having examined the exhibits that were submitted by both sides in regard to the motion for summary judgment, I conclude that no genuine issue of material fact exists, and that defendant is entitled to have summary judgment entered in its favor.  I find both that plaintiff has failed to satisfy the requirements of a *prima facie* case in regard to both of her claims, and that she has failed to

demonstrate that the legitimate business reason upon which defendant relies is a pretext for discrimination.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The evidence in the record must be viewed in the light most favorable to the nonmoving party, and the nonmovant must be allowed the benefit of all reasonable inferences to be drawn from the evidence.  Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10TH Cir. 1985).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  This burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

A genuine factual issue is one that "can reasonably be resolved only by a finder

of fact because [it] may reasonably be resolved in favor of either party." Id. at 250.  The

substantive law identifies which facts are material. Id. at 248.  A dispute over a

material fact is genuine when the evidence is such that a reasonable jury could find

for the nonmovant.  One of the principal purposes of summary judgment is to isolate

and dispose of factually unsupported claims or defenses, and the rule should be

interpreted in a way consistent with this purpose. Celotex, 477 U.S. at 323-24.

### McDONNELL DOUGLAS BURDEN SHIFTING

Plaintiff has presented no direct evidence of discrimination.  Instead, she relies

upon circumstantial evidence to support her claims.  In these circumstances, the

court is required to analyze her claims pursuant to the burden-shifting formula

provided in McDonnell Douglas.

When a plaintiff relies on circumstantial evidence, courts are required to apply

the three-step burden-shifting framework set forth in McDonnell Douglas and its

progeny. McDonnell Douglas Corp. v. Green, 411 U.s. 792, 800-07 (1973); Garrett v.

Hewlett Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002) (holding that McDonnell

Douglas applies both to Title VII and ADEA claims); Wells v. Colo. Dep't of Transp.,

325 F.3d 1205, 1212 (10th Cir. 2003) (McDonnell Douglas applies to retaliation

claims). McDonnell Douglas first requires plaintiff to establish a prima facie case of

prohibited employment action.  The "Burden of establishing a prima facie case . . . by

a preponderance of the evidence" is "not onerous." <u>McCowan v. All Star Maint., Inc.</u>,

273 F.3d 917, 922 (10th Cir. 2001) (internal quotation marks omitted).  Once plaintiff

makes a prima facie showing, the burden shifts to defendant to state a legitimate,

"nondiscriminatory reason" for its "adverse employment action." <u>Wells</u>, 325 F.3d at

1212.  If defendant meets this burden, then summary judgment is warranted unless

plaintiff can show that there is a genuine issue of material fact as to whether the

proffered reasons are pretextual.  *See* <u>Jones v. Denver Post Corp.</u>, 203 F.3d 748, 756

(10th Cir. 2000).  Failure on the part of plaintiff to come forward with evidence of pretext

will entitle the defendant to judgment.  <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d

526, 529 (10th Cir. 1994) (*citing* <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S.

248, 256 (1981) (evidence of pretext "is crucial in an ADEA case").

## EVENTS IN REGARD TO PLAINTIFF'S TERMINATION

### 1.  Facts not genuinely disputed.

The following facts are taken from the parties' undisputed facts and exhibits.

They are either not disputed, or I find that no genuine issue of fact exists in regard to

them.

Plaintiff was employed as a Customer Service Representative ("CSR") from

1997 to December 16, 2002, at the Supervalu Customer Service Center in Aurora,

Colorado ("Supervalu" or defendant).  In that position, she was responsible for

responding to calls from grocery retailers who had questions or problems with merchandise deliveries. Plaintiff was required to meet performance goals set by defendant by handling a certain number of calls within a given period of time, and do so with accuracy.

Plaintiff was scheduled to be evaluated on December 16, 2002, from 8:00 a.m to 9:00 a.m. by Billy Parry, her supervisor. The evaluation that was to be conducted was termed a Total Service Performance evaluation, or "TSP." The TSP's were scheduled by work force management. They were conducted on a routine and regular basis, and were conducted in conference rooms that were set aside for the purposes of these conferences.

Approximately one week before her TSP, plaintiff sent an e-mail to Parry in which she expressed her desire to be relieved of the requirement to attend the meeting. Her e-mail was prompted by the fact that on December 9, 2002, she had participated in a "Corrective Action" meeting that had resulted in a corrective action in regard to her. The "corrective action" informed her that she needed to increase the number of calls that she handled, that is, improve her "handle factor performance." The following e-mail exchanges occurred between plaintiff and Parry:

**December 10, 2002**

> **Plaintiff to Parry (5:26 a.m.):** "Could you please
> cancel the One on One for next Monday since the Corrective

Action was given yesterday."

> **Parry to plaintiff (5:27 a.m.):** "Good Morning.  I will provide the answer to your email later in the morning.
> As for your first week of December (Week 12/01/02), you achieved a Handle Factor of 87.  Thank you for the focus."

> **Parry to Plaintiff (5:30 a.m.):** "Since our 1-1 meeting will cover your Total Service Performance (all areas of performance), and the Corrective Action only cover[s] one specific area of Total Service Performance, I will not be canceling this meeting.  If you have any questions, please feel free to come by and discuss this decision with me."

> **Plaintiff to Parry (6:04 a.m.):** "Then I chose [sic] not to attend.  I don't need anymore stress.  Thank you."

**December 16, 2002**

> **Plaintiff to Parry (8:39 a.m.):** "You did not respond when I sent this to you on Tues last week and again this morning.  I feel like you are 'hammering' me.  I am working on the Corrective Action Report issue and the 1-1 is adding to the stress.  I do feel that you ignored both my e-mails."

Parry testified in his deposition that he had e-mail and telephone communications with plaintiff on the morning of the 16th that apparently preceded the above-quoted e-mail of December 16 from plaintiff.  His earlier e-mail is not included with any of the exhibits presented by the parties, but Parry testified that his e-mail reminded plaintiff of the meeting that was scheduled for that date, and of the time.  He also testified that when he arrived at work on the morning of the 16th that he had

printed off the employees' schedules, and handed them out. He stated that plaintiff's schedule "had the 1-1 listed on the schedule itself," and the room where the conference would be conducted.

Parry testified that he would not have "invited" plaintiff to attend the meeting. Rather, in his words, "I would re-inform somebody that I had scheduled a meeting for them and that it was going to take place." In response to questioning by counsel for plaintiff, Parry testified that plaintiff's e-mails had caused him to become aware that she was taking an "insubordinate position" in regard to the meeting. For that reason, he  stated that after plaintiff did not arrive for the meeting on the morning of the 16th at the appointed time, he sent an e-mail, and made a telephone call to plaintiff, reminding her to appear at that time. Deft's Mtn SJ, Ex. G. Plaintiff persisted in stating that she would not agree to meet with Parry for a TSP, or would not appear for a TSP that occurred in a place and manner that had been determined by him or the company.

Following the e-mail and telephone exchanges with plaintiff, Parry went to Mike Cic, his management supervisor. Parry testified that he explained to Cic that plaintiff had refused to meet with him, and asked Cic for his opinion and guidance. Cic sought assistance from Pam Tamas, the director. After doing so, he indicated to Parry that he should approach plaintiff with an offer to meet with her in the presence of

another supervisor.  If she refused, Parry should move forward with termination.

Defendant's employee handbook states that insubordination is cause for immediate

dismissal from employment.  Id., Ex. E.

Parry enlisted the assistance of Nena McFarland, and the two of them

approached plaintiff at her desk, which was situated in an open cubicle, or cube.

Parry testified that he "offered once again to meet with [plaintiff] with both of us[,] and

she refused" to meet with them anywhere that was away from her desk or the cubicle

area.  He indicated during this conversation with plaintiff that he would meet anywhere

with her, if she was objecting to the conference room, but he would not meet with her

at her desk.  To Parry, "[h]er desk was unacceptable."  He explained that he would

only meet with her in "[a]ny room that is beyond where the CSRs could overhear the

conversation."  Plaintiff persisted in her refusal to meet with Parry except in the open,

apparently where the conversation could be overheard.  Parry informed plaintiff at

some point that he "would come to her desk after lunch."

Parry concluded that plaintiff had refused to meet with him, and left her cube.

Later, he returned to plaintiff's cube, again with Ms. McFarland, and informed plaintiff

that he was terminating her, or letting her go.  Plaintiff was instructed to pack and

leave immediately.

Parry summarized the events leading up to his termination of plaintiff, and his reasons for doing so, in his e-mail of December 16, 2002, to members of Supervalu's management.  Id., Ex. G.  He stated, "[d]ue to this act of insubordination, SVCS is terminating our employment with Neila Brooks – refusal to attend a scheduled 1-1 Monthly Review."  Id.

Plaintiff does not dispute any of the above actions or exchanges between herself and Parry.  Rather, she disputes the interpretation or characterization to be given to the conversations and events.

Plaintiff testified that she believed that the TSP meeting was unnecessary because, in her words, "they had just given me the corrective action letter and that he was harassing me, basically."  She admits that Parry telephoned her the morning of the meeting, and admits that he was waiting for her in the conference room.  Plaintiff testified that she asked Parry if they could meet somewhere "in the open," either at plaintiff's desk or Parry's, both of which are located in cubicles that are open above the partitions.  Plaintiff explained that she wanted the meeting to be "in the open" because she "didn't want to run the risk of being misquoted."  She stated, however, that in response to her comments Parry "kept telling me, I really need you to come down here."

## 2.  Plaintiff's attempt to create sham issues.

Plaintiff attempts to support her view of the events in an affidavit of herself, which she attaches as an exhibit to her Response to the motion for summary judgment.  Pltf's Resp., Ex. 1.  Defendant points out in its Reply that "[a] conclusory self-serving affidavit is insufficient to overcome summary judgment."  Deft's Mtn MJ at 16 (*citing* Wells v. Shalala, 228 F.3d 1137, 1144 (10th Cir. 2000); Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (holding that a conclusory, self-serving affidavit is insufficient to show dissimilar treatment in a Title VII case and withstand a motion for summary judgment).

An affidavit also may be ignored or disregarded by a court if the court finds that the affidavit is an effort or attempt to create "sham" issues of fact.  Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986).  Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001).  To determine whether an affidavit constitutes such an effort, trial courts should consider three factors: (1) Was the affiant cross-examined during her earlier testimony?  (2) Did the affiant have access to the pertinent evidence at the time of her earlier testimony?  And, (3), does the earlier testimony reflect confusion which the affidavit attempts to explain?  Id.

In light of these principles, I will evaluate on a statement-by-statement basis each effort by plaintiff to support her case by means of the statements made by her in

her affidavit.  Conclusory or unfounded assertions provide no support for her claims.

Statements that could have been made during plaintiff's deposition, but were not, or

statements that are not intended to clarify her deposition testimony, will be weighed to

determine whether the statements are a sham effort by plaintiff to create issues of

fact.  If so, such statements will be disregarded.  *See also* Kendrick v. Penske

Transportation Services, Inc., 220 F.3d 1220, 1224 n. 2 (10th Cir. 2000)

Plaintiff argues that she continually asked Parry to conduct the TSP at her desk,

and, in her view, Parry did agree to come to her desk, although she learned that he

came to her desk to terminate her, not to conduct the TSP meeting.  Nevertheless,

she concludes from Parry's appearance at her desk that she "attended every meeting

that Billy Parry himself scheduled to meet with me."

In her affidavit, plaintiff supports this view of events in her statement that "[i]t

was my understanding that the meeting would take place at the time that [Parry] came

to my cubicle."  Plaintiff does not express anywhere during her deposition that she

harbored this "understanding" that "the" meeting, apparently meaning the TSP

meeting, was to occur at her cubicle.  And she never testified or averred that Parry told

her that he was coming to her cubicle for the purpose of conducting the TSP there at

her cubicle. In fact, when Parry arrived at her cubicle with Ms. McFarland, Parry utilized

the so-called meeting to inform plaintiff that she was terminated.

Plaintiff's attempt in her affidavit to demonstrate that the TSP meeting was to occur at noon at her cubicle is a sham attempt by plaintiff to create an issue of fact. For that reason, I disregard the statements in her affidavit that are to that effect. When those statements are disregarded, the remaining evidence in the summary judgment record reflects that plaintiff has failed to provide any evidentiary support for her claim that she "attended every meeting that Billy Parry himself scheduled to meet with me."

## PRIMA FACIE CASE

Plaintiff's first obligation under the McDonnell Douglas burden-shifting formula is to demonstrate that she can establish a *prima facie* case with regard to each of her claims. Defendant argues that to establish her *prima facie* case of age discrimination, plaintiff must satisfy the requirements that are set forth in Cone v. Longmont Hosp. Ass'n, 14 F.3d at 529, and to establish her *prima facie* case of gender discrimination plaintiff must satisfy the requirements that are set forth in Cole v. Ruidoso Mun. Schls., 43 F.3d 1373, 1379-80 (10th Cir. 1994). The requirements in each of these cases are similar, and require a plaintiff in a discriminatory discharge case to provide evidence in regard to four factors: (1) she was in the protected age or gender group at the time of her discharge; (2) she was qualified, or doing satisfactory work; (3) she was discharged; and (4) for a claim of age discrimination, her position was filled by a younger person or younger people were treated more favorably than

her; for a claim of gender discrimination, male employees were treated more favorably than her.

Defendant does not dispute that plaintiff has met her burden with regard to the first and third factors, that plaintiff was a woman, that she was over 40 years of age, and that she was discharged from her employment.  The two prongs that are at issue are the second and fourth prongs.  The second prong relates to plaintiff's performance at the time that she was discharged, and the fourth prong relates to any action that defendant took in relation to her position after she was terminated.

I conclude that plaintiff has failed to meet her burden with regard to either the second or fourth prongs.  Therefore, plaintiff has failed to show that she can establish a *prima facie* case in regard to either of her claims.

**Second prong, qualified for the job.**  The second prong of a *prima facie* case requires plaintiff to demonstrate that at the time that she was terminated she was qualified for the job, or "was doing satisfactory work."  Cone v. Longmont United Hosp. Ass'n, 14 F.3d at 529 (*citing* Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1420 (10th Cir. 1991).  The undisputed exhibits and evidence submitted by defendant demonstrate that plaintiff was not performing satisfactorily at the time that she was terminated.

Plaintiff argues that at the time that she was terminated by Supervalu her

performance was sufficiently satisfactory to support a *prima facie* case in regard to both of her claims.  She quotes from a decision from the Tenth Circuit Court of Appeals in which the Court stated, "a plaintiff may make out a *prima facie* case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she had when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time."  MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1119 (10th Cir. 1991).

Plaintiff argues that she meets the test in MacDonald for all of the reasons stated in that case: because she herself believed her performance to be satisfactory, because she continued to manifest the objective qualifications for her position, and because she had held her position at Supervalu for five years, a "significant period of time."  Pltf's Resp. at 11.  Plaintiff points to two exhibits as indicia that she was performing satisfactorily, Parry's first e-mail to plaintiff on December 10, 2002, and deposition testimony from Parry, "confirming that she had met her performance goals seven days prior to her termination."  Id., *citing* Parry depo, Ex. 2 at 61.

Parry's e-mail of December 10, 2002, is quoted in full above, but in regard to plaintiff's performance, Parry states, "*As for your first week of December* (Week 12/01/02), you achieved a Handle Factor of 87.  Thank you for the focus."  Pltf's Resp.,

Ex. 5 (emphasis added).  And during his deposition, in response to questioning by counsel for plaintiff as to whether plaintiff had "met her goal of the handle factor," Parry testified, "[f]or the *first week of it.*"  Id., Ex. 2 at 61 (emphasis added).  Counsel for plaintiff and Parry agreed that plaintiff's corrective action was to extend to "sometime in January."  Id.

These two exhibits do not establish what plaintiff claims they establish.  They reflect only that for one week of a multi-week period to which she would be subjected to a corrective action, she performed satisfactorily for that one week.  The two exhibits do not establish that plaintiff was generally performing in a satisfactory manner.

Defendant argues that at the time plaintiff was terminated she was *not* performing satisfactorily, and, therefore, cannot demonstrate this prong of a *prima facie* case.  In support of its position, defendant included nineteen exhibits.  Deft's Mtn SJ, Ex's H - X.  These exhibits were offered by defendant to document plaintiff's performance problems, beginning September 19, 2000, and ending with the corrective action of December 9, 2002, one week before plaintiff's termination. Defendant's exhibits are poorly marked and organized, so reference here is made to the documents by date and title, and not by any particular exhibit letter.  The following exhibits are from only the six months immediately preceding plaintiff's termination.

1.  **June 27, 2002, "Verbal Action for Insubordination**:" Linda Amos reported in this memo that "[d]uring May's One on One with Neila

Brooks, on June 27, 2002, Neila was instructed to discontinue working on personal craft projects at her desk," a decision that was made for all CSR's, but applicable to plaintiff in particular because "she has not achieved an acceptable handle factor and has been making numerous processing errors, during the past two months."

In response to this directive from Amos, plaintiff stated that "she will not discontinue working on her personal projects at her desk, unless this directive was put in writing. Amos concludes, "Neila's refusal to abide by this directive is insubordination." Plaintiff "refused to sign" the memo when it was presented to her on June 28, 2002.

2. **June 28, 2002, "Addendum to TSP review for 5/2/2002:"** Amos supplemented the above memo of June 27, 2002, by stating that she explained to plaintiff that "her errors have increased to an unacceptable amount and I believe her crafts are interfering with her attention to detail." Amos also stated that "Neila refused to review this document after I requested to read it to her four times. She also refused to sign it."

3. **June 28, 2002, "E-mail of plaintiff to Amos, Tamas, Cic and Sheldahl:"** Plaintiff stated in this e-mail to her supervisors and managers that she has "received a Written Notice for Insubordination today which I have not read yet and refuse to sign it." Plaintiff stated that "SV has created a Hostile Environment thru the set up of their Monitoring Process and I am extremely upset with the stress I am getting over my Performance Review." Plaintiff asserted that work on her "personal projects" was "the only stress relief that I found that works for me." She did not believe that it interfered with her work.

4. **August 7, 2002, "Oral Reminder for Performance**:" plaintiff was informed by Linda Amos during a TSP evaluation that she "must diminish the amount of rework issues she has been incurring," and if the goal established for her was not met, "then further corrective action will be taken." Plaintiff declined both to review the memo prepared by Amos, as well as to sign it .

5. **October 15, 2002, "Verbal Warning**:" Parry's memo to the file states that from August 2002 through September 2002, plaintiff "has consistently achieved a below standard handle factor performance. . . ." She was given certain goals to meet during October and November.

6. **October 30, 2002, "Corrective Action Report**:" plaintiff was informed that for the week of October 20 she failed to meet the goal established for her in the Verbal Warning of October 15.  Plaintiff acknowledged receiving this Report, but "did not wish to sign it."

7. **November 14, 2002, "Development/Corrective Action Plan**:" plaintiff was informed by Parry that "[d]ue to below standard achievements in Handle Factor performance," she was directed to meet certain performance goals by certain deadlines."  Plaintiff refused to sign.

8. **December 6, 2002, "Corrective Action Report (dated and offered to plaintiff December 9, 2002)**:" Parry informed plaintiff that she generally had failed to meet the goals set for her in the Corrective Action of November 14, and that "[t]he management of SVCS believed this goal should be reached by a CSR with over 5 years of SVCS experience. . . ." Parry handwrote on the Report, "Neila did not want to review the description in this first written.  I did review the actions to be taken section of her first written."

In addition to all of the above corrective actions and warnings, plaintiff was admonished on several occasions in regard to her "unnotified absences" from work, absences for which she did not have permission or sufficient time in her "attendance bank."  Ultimately, on August 9, 2002, she was given a Corrective Action Report for unnotified absences that stated that it was her "3rd and Final Occurrence."  This memo referred to plaintiff's previous absences, and informed her that if she had "additional issues" related to attendance within the next 90 days, her employment would be

18

terminated.

Defendant's exhibits demonstrate that at the time that she was discharged plaintiff was not performing satisfactorily.  Plaintiff herself discussed in her e-mails to Parry the fact that she had as of December 9, 2002, just been placed under a corrective action.  She admitted that the corrective action was serious, so serious that it had caused her a great deal of stress.  In plaintiff's mind, her level of stress was so serious that she believed that she should be relieved of the usual requirement to attend a TSP evaluation meeting.

Evidence that plaintiff was a five-year employee, and evidence that she harbored a subjective belief that she was performing satisfactorily, do not outweigh the express evidence submitted by defendant that reflects that her performance was not satisfactory.  I conclude that plaintiff has failed to show the existence of a genuine issue of material fact with regard to this prong of a *prima facie* case, and she has failed to meet even her minimal burden to demonstrate that she was performing satisfactorily at the time of her discharge.  For that reason, she has failed to establish the second prong of a *prima facie* case for both age and gender discrimination.

**Fourth prong, defendant's action in regard to plaintiff's position following her termination.**  Plaintiff argues that the court should evaluate this prong pursuant to the standards set forth by the Tenth Circuit in cases that involve reductions in force.  Pltf's

19

Resp. at 12-14, *citing* Branson v. Price River Coal Co., 853 F.2d 768 (10th Cir. 1988);

Rea v. Martin Marietta Corp., 29 F.3d 1450 (10th Cir. 1994).  Under those standards,

plaintiff argues, she should be required for age discrimination to prove only that

defendant retained younger employees after her termination, and for gender

discrimination to prove only that defendant retained male employees, or treated them

more favorably.

Defendant argues that plaintiff is required to demonstrate for age

discrimination that her position was filled by a younger person, and for gender

discrimination that she was treated less favorably than male employees.  It bases

this argument upon the standards for a *prima facie* case that are provided in the Cole

and Cone cases.

**1**

The Tenth Circuit has held that in order for a plaintiff to establish her *prima*

*facie* case, she is not required to show that the defendant hired someone outside of

the protected class in order to make out a prima facie case.  Kendrick v. Penske

Transportation Services, Inc., 220 F.3d at 1226.  The elements of a *prima facie* case

are that plaintiff show that (1) she belongs to a protected class; (2) she was

performing satisfactorily; (3) despite her performance, she was discharged; and (4)

the job was not eliminated after her discharge.  Id. at 1229, *citing* Perry v. Woodward,

199 F.3d 1126, 1138 (10th Cir. 1999); <u>Denison v. Swaco Geolograph Co.</u>, 941 F.2d at

1420.  The Court explained:

> The [Supreme] Court recognized in <u>McDonnell</u>
> <u>Douglas</u> that although the articulation of the plaintiff's
> prima facie test might vary somewhat depending on the
> context of the claim and the nature of the adverse
> employment action alleged, <u>McDonnell Douglas</u>, 411 U.S.
> at 802, 93 S.Ct. 1817, the essential purpose served by a
> prima facie test remains the same.  The "prima facie case
> serves . . . [to] eliminate the most common
> nondiscriminatory reasons for the plaintiff's rejection."

<u>Kendrick</u> at 1227 (*citing and quoting* <u>Texas Dep't of Community Affairs v. Burdine</u>, 450

U.S. 248 253-54 (1981).  The employee who belongs to a minority and who

eliminates the two most common, legitimate reasons for termination, i.e., lack of

qualification or the elimination of the job, has at least raised an inference that the

termination was based on a consideration of impermissible factors.  <u>Id</u>. at 1229.

The fourth element of a prima facie case is a flexible one that can be satisfied

differently in varying scenarios.  <u>Plotke v. White</u>, 405 F.3d 1092, 1100 (10th Cir. 2005).

"[T]he facts of a given case dictate the measure by which the <u>McDonnell Douglas</u> and

corresponding <u>Kendrick</u> tests should be applied."  <u>Id</u>.  The Supreme Court has

emphasized that <u>McDonnell Douglas</u> was never intended to set an inflexible rule, and

the Tenth Circuit has stated that "[c]ollapsing the four-part prima facie case of

<u>McDonnell Douglas</u> into a three-part test may occasionally be helpful when

addressing discrimination claims that either do not fall into any of the traditional

categories . . . or *present unusual circumstances.*" Id. (*quoting* Chertkova v.

Connecticut Gen. Life Ins., 92 F.3d 81, 91 (2d Cir. 1996) (emphasis added by Tenth

Circuit).

The critical *prima facie* inquiry in all cases is "whether the plaintiff has

demonstrated that the adverse employment action occurred "under circumstances

which give rise to an inference of unlawful discrimination." Kendrick, 220 F.3d at

1227. There must simply be a logical connection between each element of the *prima*

*facie* case and the inference of discrimination. Id.

The Tenth Circuit has observed that courts have enumerated a variety of

circumstances that can give rise to an inference of discriminatory motive, including

the following:

> "actions or remarks made by decisionmakers that could be
> viewed as reflecting a discriminatory animus. . . . ,
> preferential treatment given to employees outside the
> protected class     . . . , in a corporate downsizing, the
> systematic transfer of a discharged employee's duties to
> other employees . . . , or a pattern of recommending the
> plaintiff for positions for which she is not qualified [or over-
> qualified] and failure to surface plaintiff's name for
> positions for which she is well-qualified. A plaintiff might
> also rely upon the fact that the defendant, following
> plaintiff's termination, continued to seek applicants to fill
> the position, . . . or, more generally, upon the timing or
> sequence of events leading to plaintiff's termination.

Plotke v. White, 405 F.3d at 1101 (*quoting* Chertkova, 92 F.3d at 91 (listing cases)).

**2**

Plaintiff has presented no evidence that would tend to demonstrate that her termination occurred "under circumstances which give rise to an inference of unlawful discrimination." Kendrick, 220 F.3d at 1227. Her effort to rely upon evidence that would satisfy the test for reduction-in-force cases is misplaced.

Plaintiff argues that the court should allow her to satisfy her requirements for a *prima facie* case by submitting evidence that would satisfy the test for a reduction-in-force case. Referring to the test in Kendrick, plaintiff argues that Kendrick holds that she need not show that a person outside of the protected class was hired, but only that after her termination her job remained open. Pltf's Resp. at 13-14. She points out that in the circumstances presented here, "her job remained available, and was later filled pursuant to the regular procedure used for customer service representatives vacancies at Supervalu." Id. at 14.

The arrival and departure of employees at Supervalu was an ongoing process. Plaintiff included as exhibits with her Response two "Supervalu Customer Service Lists." Pltf's Resp., Ex's 8 & 9. Exhibit 8 contains the names of 110 CSR's, and Exhibit 9 contains the names of 75 CSR's. Defendant does not dispute that these lists reflect that in the year 2000, defendant employed approximately 110 customer

service representatives, and in the year 2001 it employed approximately 75. Pltf's

Resp. at 8, Undisputed Fact #11. At the time of plaintiff's termination, defendant

organized the CSR's into 6 or 7 teams of 10-15 members, or somewhere in the range

of 60 to 105 CSR's. Id. Defendant also does not dispute that defendant's annual

turnover of employees varied between 20 percent to 100 percent of the employees per

year. Id., Undisputed Fact #12. As turnover occurred, Supervalu waited until it had

vacancies for 6 to 8 CSR's at which time it would interview and hire a bloc of people to

fill the slots. Id. Defendant agrees that "[w]hen Ms. Brooks was terminated, this

procedure was followed, so that her position was eventually filled by another

employee, but it is impossible to determine who that employee was." Id.

Plaintiff relies upon the statements that she made in her affidavit in order to

support her argument. In her affidavit, plaintiff stated that "[t]he customer service

representatives at Supervalu were overwhelmingly younger people, and the majority

of customer service representatives were under the age of 40." She stated that "I was

either the oldest customer service representative or among the three or four oldest,"

and that "[o]ver 90% of the customer service representatives were younger than me."

Almost as an afterthought, in her last line of her affidavit, plaintiff tosses out the

proposition that "[t]hey also retained all of the existing male customer service

representatives."

Plaintiff asserts in her argument that these undisputed facts establish that after she was terminated from employment defendant retained employees who were younger than plaintiff and/or were male, and establish that her position "remained open" until the time when defendant hired a bloc of employees to fill its vacant slots. Thus, in her view, she has presented evidence that establishes the fourth factor for an age discrimination case.

3

Plaintiff's arguments are flawed for several reasons.  First, plaintiff made no mention during her deposition that she believed that a statistical disparity existed with regard to the ages and/or sexes of the CSR's.  For this latter reason, I find that the so-called statistics presented by plaintiff in her affidavit are a sham effort to create an issue of fact, and I will disregard them.

Second, even if I were to accord some evidentiary value to plaintiff's conclusory remarks, this is not a reduction-in-force case.  The Tenth Circuit addressed this proposition in Plotke v. White.  It stated there, "where an employer contends the actual reason for termination in a discriminatory firing case is not elimination of the employee's position but, rather, unsatisfactory conduct, the status of the employee's former position after his or her termination is irrelevant."  405 F.3d at 1100; *see also* Abuan v. Level 3 Communications, Inc., 353 F.3d 1158, 1169 (10th Cir. 2003) (holding

that in case of disciplinary termination employer could not rely upon elimination of position as evidence of non-discrimination) . In ordinary circumstances, the fact that plaintiff's position remained available as "a single, distinct position" after her termination could be a factor that might be considered relevant to a determination of discriminatory motive. But here, Supervalu employs approximately 100 people who perform exactly the same function. It does not fill the vacancies of particular employees as such. Rather, it merely keeps its numbers at some fluctuating level by hiring groups of employees, apparently on an "as needed" basis. In this type of circumstance, the presence or absence of a "vacancy" proves nothing. It neither favors nor disfavors either plaintiff or defendant.

Third, plaintiff has not provided any evidentiary support for the conclusory statements that she makes in her affidavit with regard to defendant's alleged "retention" of younger or male employees. She has provided no evidence that she had any personal knowledge with regard to the ages of all 110 of the CSR's, including all of the CSR's who were organized into different teams and/or worked different shifts. The Seniority Lists submitted by plaintiff, her Exhibits 8 and 9, provide only the dates of employment for CSR's, and do not provide any evidence of their age. Additionally, Exhibit 8 contains the names of 110 CSR's, and Exhibit 9 contains the names of 75 CSR's. For age discrimination, to support her assertion that the

employees retained by defendant were "overwhelmingly younger people," plaintiff must provide *some* evidence, apart from her own conclusory observations, that would support her statements about the relative ages of that many employees.

For gender discrimination, plaintiff's effort to show that she was terminated because of her gender falls flat when an examination of her Exhibits 8 and 9, the lists of employees working during 2000 and 2001, reveals that virtually 60 to 70 percent of the employees at that time were women – or, at least, possessed feminine names. Her effort to show gender bias is further undermined by her effort to show age bias, because her two examples of employees who received allegedly preferential treatment on the basis of age are both women, "Shannon" and Amber Duran.  *See* Deft's Mtn SJ, Ex B at 145 & 146.

Fourth, even if plaintiff had some kind of factual basis for the conclusory percentages that she presents in her affidavit, her statistics do not demonstrate discrimination.  The Tenth Circuit has stated that evidence relevant to showing discrimination may include "disturbing procedural irregularities."  Cone v. Longmont United Hosp. Ass'n, 14 F.3d at 532 (*citing* Mohammed v. Callaway, 698 F.2d 395, 399 (10th Cir. 1983).  But plaintiff has presented no evidence of any procedural irregularities in defendant's hiring and firing practices, and no evidence that would suggest that defendant's practices were part of a systematic effort to eliminate, or

discriminate against, women or older employees.  As the Tenth Circuit has noted, "[s]tatistics taken in isolation are generally not probative" of discrimination.  Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir. 1995) (citing Cone).

In order for statistical evidence to create an inference of discrimination, the statistics must show a significant disparity between individuals who are comparable, and eliminate nondiscriminatory explanations for the disparity.  Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991).  A plaintiff's statistical evidence "must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals."  Id. (emphasis in original). To make valid comparisons between herself and others, plaintiff would need to compare herself with younger and/or male employees who were not terminated from employment in circumstances in which they, like plaintiff, persistently refused to attend an important meeting, such as a TSP meeting, had a six-month history of corrective actions, were  subject to a corrective action at the time of termination, and were not performing at the level expected for an employee of a given number of years. See, e.g., Cone, 14 F.3d at 532-33 (an employee terminated for failure to return from leave could show that other employees were similarly-situated if "all were told their positions would not be held open and would be immediately filled, all were equally eager to return to work at the end of their leaves of absence, all had similar job

performances without differentiating or mitigating circumstances, and if 'substantially similar' jobs were equally available to the returning employees at the end of their leaves").

**Conclusion regarding *prima facie* case.**  In summary, even if plaintiff's effort to submit statistics in support of her claims were not disregarded as sham, her so-called conclusory statistics prove nothing.  Plaintiff has failed to show the existence of a genuine issue of material fact in regard to the two prongs of the *prima facie* case that are disputed here.

Even after collapsing the requirements for a *prima facie* case into a three-part test, plaintiff has failed to eliminate "the most common nondiscriminatory reasons" for defendant's termination of plaintiff.  Kendrick, 220 F.3d at 1227.  She has failed to meet her minimal burden to show that she was performing satisfactorily, and she has failed to show the existence of circumstances that "at least raise[s] an inference that the termination was based on a consideration of impermissible factors."  Id. at 1229.  She has presented no facts surrounding her termination that suggest that it occurred "under circumstances which give rise to an inference of unlawful discrimination."  Id. at 1227.  Having failed to raise even an inference of unlawful discrimination on the basis of either age or gender, plaintiff has failed to establish a *prima facie* case with

regard to her claims. Defendant is therefore entitled to have summary judgment entered in its favor on both of plaintiff's claims.

## PRETEXT

I have concluded that plaintiff's claims should be dismissed because she failed to establish a *prima facie* case with regard to both of her claims. However, even if plaintiff had presented evidence that rose to the level of a *prima facie* case, she nevertheless is unable to show that the legitimate business reason upon which defendant relies is a mere pretext that was advanced by defendant in order to cloak discriminatory motives. Defendant is entitled to have its motion for summary judgment granted for this reason as well.

If a plaintiff satisfies the initial burden of establishing a *prima facie* case of discrimination, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. McDonnell Douglas, 411 U.S. at 802. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual. Id. at 804.

Supervalu has satisfied its burden to provide evidence that it terminated plaintiff's employment for a legitimate business reason. As discussed above, plaintiff refused to attend a mandatory meeting with her supervisor, and her supervisor concluded that her actions were insubordinate. The employee handbook for

30

Supervalu employees provided that an employee could be terminated for insubordination.  Thus, having provided evidence of a legitimate business reason for its decision, the burden shifts back to plaintiff to demonstrate that defendant's asserted reason is pretextual.

A plaintiff may show pretext in one of three ways: "(1) with evidence that defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances; or (3) with evidence that . . . [the employee] was treated differently from other similarly-situated employees . . . ." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000) (internal citations omitted).  In determining whether defendant's proffered reasons for its decision were pretextual, the court is required to examine "the facts as they appear to the person making the decision. . . ." Id. at 1231.

The relevant inquiry is not whether proffered reasons were wise, fair or correct, but whether [defendant's agent] honestly believed those reasons and acted in good faith upon those beliefs." Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999) overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  Even a belief that is mistaken "can be a legitimate reason for an employment decision and is not necessarily pretextual." EEOC v. Flasher, 986 F.2d

1312 (10th Cir. 1992).  Plaintiff's primary obligation is to "present enough evidence to support an inference that the employer's reason was merely pretext, by showing either 'that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." Cone v. Longmont United Hospital Ass'n, 14 F.3d at 530 (quoting MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115, 1121-22 (10th Cir. 1991).

## 1

Plaintiff argues  that the business reason upon which Supervalu relies is pretextual because (a) the reason offered is false, and (b) in terminating plaintiff, defendant "acted contrary to an unwritten policy or contrary to a company practice. . . ." Pltf's Resp. at 15 & 17.  Plaintiff asserts that she at least has raised a genuine issue of material fact on these two points.

Plaintiff argues, first, that the business reason advanced by defendant is false because she did not commit an insubordinate act.  In her Response, she states:

> Mr. Brooks and Mr. Parry met every time they had a scheduled meeting together. * * * Ms. Brooks followed proper company procedure in requesting that the meeting be vacated in light of the other performance meetings scheduled between the parties.  Mr. Parry acted unreasonably in refusing to vacate the meeting and demanding that Ms. Brooks meet with him in private on the morning of December 16, 2002.  Ms. Brooks reasonably requested that the meeting not be held in private. Eventually, Mr. Parry acceded to Ms. Brooks request, and

32

> stated that he would meet with her immediately after her
> lunch at her cubicle.  Therefore, Ms. Brooks did not refuse
> to attend the meeting, rather the parties agreed to go
> forward with the meeting following lunch at Ms. Brooks'
> desk.

Id. at 16.

Plaintiff supports her argument with references to numbers 1 through 8 of her

"Additional Disputed or Undisputed Material Facts."  She also relies upon her

undisputed fact #14, which refers to the decision that was made by the Hearing

Officer who heard her claim for unemployment benefits.  That officer concurred with

her version of the events.  Id. at 16 & 17.

Defendant argues that plaintiff's version of the events that preceded her

termination is not supported by the evidence in the summary judgment record.  In its

Reply, defendant lists the challenges that it has in regard to plaintiff's allegedly

undisputed facts numbered 1 through 8, including its challenge to the contents of

plaintiff's affidavit.  Defendant also argues that the report of the Hearing Officer in

regard to unemployment benefits is not admissible, and should not be considered in

deciding a motion for summary judgment.  Deft's Reply at 8 (*citing* See Nobody in

Particular Presents, Inc. v. Clear Channel Communs., Inc., 311 F.Supp.2d 1048

(D.Colo. 2004).

**2**

I agree with defendant.  Plaintiff has failed to point to admissible evidence in the summary judgment record that supports her version of events.

In my discussion above of the facts that preceded the termination of plaintiff by Parry, I concluded that portions of plaintiff's affidavit were conclusory, and represented an attempt on her part to create sham issues of fact.  I stated that I would disregard those portions of her affidavit.  Second, in her argument in regard to pretext, plaintiff focuses on her own perception of the events that preceded her termination, and not upon the perception of her supervisor, or various other managers.  However, In determining whether defendant's proffered reasons for its decision were pretextual, the court is required to examine "the facts as they appear to the person making the decision. . . ."  Kendrick v. Penske Transportation Services, Inc., 220 F.3d at 1231.  For all of these reasons, the majority of plaintiff's supporting documentation may be disregarded because the documentation is conclusory; it is an attempt to create sham issues; and it reflects only plaintiff's subjective view of events, while failing to address the facts as they appeared to Parry, in particular.

I also agree that the report of the Hearing Officer is not admissible evidence.  The report is hearsay, and it merely reflects the conclusion of someone who listened only to plaintiff's version of events in an uncontested proceeding.  I would not allow

the report into evidence if any trial were held in this case, and I therefore disregard it. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985) (the court may consider only admissible evidence when ruling on a summary judgment motion).

In her first argument, plaintiff asserts that Parry's stated reason for terminating her, insubordination, is false because she and Parry "met every time they had a scheduled meeting together." She asserts that Parry ultimately "agreed to go forward with the [TSP] meeting following lunch at Ms. Brooks' desk."

Plaintiff pointedly ignores the e-mail that she sent to Parry in which she stated, "Then I cho[o]se not to attend. I don't need anymore stress. Thank you." Plaintiff in her own mind may view that e-mail as merely an opening gambit in what she hoped would be negotiations that resulted in the transfer of the meeting from its usual place in the conference room to somewhere "in the open." But Parry testified that he viewed plaintiff's attitude in the e-mail as insubordinate.

Plaintiff also pointedly ignores the follow-up e-mails and telephone calls that were made by Parry in which he sought to persuade plaintiff to attend the meeting, and she persistently refused. Parry testified that those events reinforced in his mind that plaintiff was taking an "insubordinate position" in regard to the meeting.

For plaintiff to show that Parry's stated reason for terminating plaintiff is a pretext for discrimination, she must point to some evidence in the record that demonstrates that Parry's view of the e-mails and the several conversations that he held with plaintiff is not worthy of credence.  She has failed to point to a single piece of evidence.  In effect, she merely asserts that she had a different understanding than Parry with regard to the events that preceded her termination.

Plaintiff argues that Parry "agreed" to go forward with the TSP meeting at her cubicle after lunch.  However, plaintiff points to no evidence in the record to support this argument.  The only evidence in the record is that Parry told plaintiff that he would come to her cubicle after lunch.  Parry never stated to plaintiff that he was coming to her cubicle for any particular reason, and plaintiff has never said that Parry stated that he was coming for any particular reason.  Nor has plaintiff pointed to any evidence, either in her deposition testimony or in Parry's, that suggests that Parry's statement was part of an "agreement" to conduct the TSP at her cubicle at that time.  In short, plaintiff's understanding that Parry was coming to her cubicle after lunch because he had agreed to conduct the TSP there at that time is merely that, plaintiff's "understanding."

Plaintiff's understanding of the events has absolutely no value with regard to her requirement to demonstrate pretext.  She is required to point to evidence in the

record that demonstrates that Parry's view of the events is false, or unworthy of belief or credence.   She has failed to do so.

Plaintiff argues that with regard to the events surrounding the scheduled TSP she acted reasonably, and Parry acted unreasonably.   Even if true, those facts are irrelevant.   As noted above, the relevant inquiry is not whether Parry acted unreasonably upon his beliefs, but whether he "honestly believed those reasons and acted in good faith upon those beliefs."   Bullington v. United Air Lines, Inc., 186 F.3d at 1318.   Even a belief that is mistaken "can be a legitimate reason for an employment decision and is not necessarily pretextual."   EEOC v. Flasher, 986 F.2d 1312 (10th Cir. 1992).   Courts are not even allowed to second-guess the quality or the reasonableness of the decisions that are made by employers.   Kendrick v. Penske Transportation Services, Inc., 220 F.3d at 1233 (quoting Simms v. Oklahoma ex rel. Dept. of Mental Health, 165 F.3d 1321, 1330 (10th Cir. 1999).

The undisputed evidence in the record demonstrates that Parry honestly believed that plaintiff refused to attend the TSP at the place that was designated by the company for holding such meetings, and believed that plaintiff's refusal to attend constituted an act of insubordination from which she never budged.   Evidence of the sincerity of Parry's belief is found in the fact that he consulted with his management, Michael Cic, and discussed plaintiff's insubordination with him, and is found in the

37

fact that Cic in turn consulted with Pam Tamas, the director.  After Cic and Tamas

consulted about a course of action for Parry to follow, they suggested that he

approach plaintiff with another supervisor, and attempt to persuade her one more

time to attend the TSP meeting.  Parry tried this suggestion, taking Neva McFarland

with him to plaintiff's cubicle, and plaintiff still persisted in her refusal to attend the

meeting.  All of these events reflect that Parry truly believed that plaintiff was acting in

an insubordinate fashion.  Plaintiff has pointed to no evidence whatsoever that

reflects that Parry's belief in regard to plaintiff's insubordination was dishonest or

insincere.

Even though defendant need not demonstrate that Parry thought and acted

reasonably, the undisputed evidence in the record shows that Parry's beliefs, in fact,

were reasonable.  The evidence in the record, including the series of e-mails and

plaintiff's own deposition testimony, demonstrates that plaintiff refused to attend the

meeting that Parry was directing her to attend.  Plaintiff could hardly be clearer in her

intentions when she stated in her e-mail, "I cho[o]se not to attend."  Given such a clear

statement from plaintiff, Parry was justified in concluding that plaintiff was being

insubordinate.  However, whether he was justified or not, plaintiff's burden is to show

that Parry's statements with regard to insubordination were  dishonest, and were

made up by him to cover his motives to terminate plaintiff because of her gender or

age.  Plaintiff has failed to point to any such evidence.

In her second argument, plaintiff asserts that evidence of pretext is demonstrated by the fact that in terminating plaintiff defendant "acted contrary to an unwritten policy or contrary to a company practice. . . "  Plaintiff asserts that Supervalu's "company practice" was "to issue at most a verbal action" for insubordination.  Pltf's Resp. at 17.  To support her argument on this point, plaintiff points to the fact that she herself had received only a verbal warning for a previous act of insubordination, and points to the events that surrounded an employee named Laural Tangemann.  (Plaintiff spells this employee's name as "Tang<u>a</u>mann;" Supervalu spells it as "Tang<u>e</u>mann.")

Plaintiff relies solely upon the description of the Tangemann event that is contained in an e-mail that was sent by Beth Sheldahl, one of the managers for Supervalu, to another manager.  In the e-mail, Sheldahl explains the events surrounding the Laural Tangemann incident:

> Laural Tangemann is another CSR that was not meeting expectations and she is white and over 40.  Laural may be the CSR that Neila was speaking of.  Laural was barely meeting standards in 2001 and then fell below. When her supervisor attempted to have the performance discussion she walked away and did not want to talk about it.  She was a no call not [sic] show after that and never returned to work.  This employee was given the chance to go back to our "Academy" after being out on the floor for a

period of time to help her get up to performance levels.
The Academy is our training area.

Pltf's Resp., Ex. 6.

Plaintiff argues that, contrary to the treatment accorded plaintiff, not only was Tangemann not terminated for insubordination, her action "resulted in further training for Ms. Tangamann." First, plaintiff mis-reads the obvious meaning of the Sheldahl e-mail. The e-mail states that during the confrontation between Tangemann and her supervisor, Tangemann walked away, and "never returned to work." The opportunity for Tangemann "to go back to our 'Academy'" referred to by Sheldahl obviously occurred before the confrontation, not after, as plaintiff asserts. The Academy apparently did not have the desired effect upon Tangemann, leading to the "performance discussion" that prompted her walkout.

Second, a single event involving a single employee hardly constitutes evidence of a "company practice." To demonstrate that Supervalu had a "practice" with regard to a subject, plaintiff would need to demonstrate that over the course of a number of comparable incidents or events, certainly more than one incident, Supervalu consistently handled them in the same manner. No such evidence exists here.

Third, nothing in the Sheldahl e-mail reflects that the circumstances surrounding Tangemann are comparable to the events that arose in regard to plaintiff. No evidence in the record reflects that a "performance discussion" is the same as

40

the TSP meeting that plaintiff was directed to attend, or was scheduled in the same manner and held in a comparable conference room.  No evidence exists that Tangemann, like plaintiff, refused to attend a TSP meeting.   No evidence exists that Parry was the supervisor who addressed the Tangemann situation.  No evidence exists that Tangemann was under a corrective action at the time that the "performance discussion" occurred.  No evidence exists that reflects that Tangemann's record at the time of the "performance discussion" was comparable to the record that plaintiff had compiled for the same period.  Finally, the complete dissimilarity between the Tangemann incident and plaintiff's is illustrated by the fact that Tangemann apparently relieved Supervalu of the need to even consider termination.  She simply walked out and never returned.  In short, the above facts demonstrate that the Tangemann incident is so dissimilar to the events giving rise to plaintiff's termination that it has no evidentiary value whatsoever.

Fourth, even if the circumstances, in fact, were comparable, nothing in the Supervalu policy states that Supervalu is *required* to discharge every employee who commits an act that is considered insubordinate, and nothing in the law requires Supervalu to treat every employee or every circumstance the same.

Title VII does *not* make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal.  It prohibits only intentional discrimination *based upon* an employee's

> protected class characteristics. Human relationships are
> inherently complex. Large employers must deal with a
> multitude of employment decisions, involving different
> employees, different supervisors, different time periods,
> and an incredible array of facts that will inevitably differ even
> among seemingly similar situations. . . .
>
> What the law does require is that an employer not
> discriminate against an employee on the basis of the
> employee's protected class characteristics.

EEOC v. Flasher, 986 F.2d at 1319 (emphasis supplied by Tenth Circuit).

Differences in the treatment of employees that are trivial, accidental or

explained by a nondiscriminatory motive will not sustain a claim of pretext. Id. at 1320.

> A company must be allowed to exercise its judgment
> in determining how severely it will discipline an employee
> for different types of conduct. "Our role is to prevent
> unlawful hiring practices, not to act as a super personnel
> department that second guesses employers' business
> judgments."

Kendrick v. Penske Transportation Services, Inc., 220 F.3d at 1233 (quoting Simms v.

Oklahoma ex rel. Dept. of Mental Health, 165 F.3d at 1330.

Plaintiff has failed to point to any evidence in the summary judgment record that

would tend to show either that Parry's belief with regard to plaintiff's insubordination

was dishonest or insincere, or to show that Supervalu acted contrary to some

"unwritten practice" when it terminated plaintiff. In fact, the record is devoid of any

suggestion that Parry's belief was dishonest, or that Supervalu had any "unwritten

practice" at all.  For those reasons, plaintiff has failed to carry her burden to show that defendant's stated legitimate business reason was a mere pretext that was offered to cloak discriminatory motives.

### SUMMARY

In summary, the majority of plaintiff's affidavit has been disregarded because it either is conclusory or is an attempt to create sham issues of fact.  For purposes of a *prima facie* case, plaintiff presented insufficient evidence from her own viewpoint to overcome the documented evidence from defendant that demonstrated that at the time that she was terminated plaintiff was not performing in a satisfactory manner. She also failed to show the existence of circumstances that "at least raise[s] an inference that the termination was based on a consideration of impermissible factors." Kendrick at 1229.  For those reasons, plaintiff failed to present sufficient evidence to raise a genuine issue of material fact as to the second and fourth prongs of a *prima facie* case.  The failure to show the existence of a *prima facie* case, alone, warrants the dismissal of plaintiff's case.

However, even if plaintiff was able to demonstrate the existence of a *prima facie* case, she failed to raise a genuine issue of fact in regard to the issue of pretext. In fact, plaintiff failed to point to any evidence that would show that defendant's stated legitimate business reason for terminating plaintiff, that is, that plaintiff was

insubordinate, was a pretext to cover the fact that a discriminatory reason more likely

motivated the decision made by Parry and the Supervalu managers.

## CONCLUSION

It is therefore ORDERED as follows:

1.  Defendant's Motion for Summary Judgment [filed April 1, 2005] is

GRANTED.

2.  Plaintiff's case is ordered dismissed, and the Clerk is directed to enter

judgment in favor of defendant.

3.  Defendant may have its costs upon presentation to the Clerk of a bill of

costs.        Dated at Denver, Colorado this 12th day of July, 2005.

BY THE COURT


s/ O. Edward Schlatter
_____
O. Edward Schlatter
U.S. Magistrate Judge